## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| SHELIA GORDON,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., and EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 USC § 1681** *et seq.* |

Plaintiff Shelia Gordon ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendants Equifax Information Services, LLC ("Equifax") and Experian Information Solutions, Inc. ("Experian"), referred to collectively as "CRA Defendants."

## I.      INTRODUCTION

1.      Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the CRA Defendants.  Plaintiff contends the CRA Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff.  "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies

1

and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II.      JURISDICTION AND VENUE

2.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.      Venue in the Eastern District of Michigan is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III.      PARTIES

4.      Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

5.      Plaintiff is a natural person who resides in Macomb County, Michigan.

6.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

7.      Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d)), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA

30309. Equifax can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

8.     Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d)), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, CA 92626.

9.     During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Michigan and conducted business in the State of Michigan on a routine and systematic basis.

10.     Defendants regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendants regularly furnish consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" ("CRAs") as defined by 15 U.S.C. § 1681a(f) of the FCRA.

11.     During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

12.    Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

### IV.    FACTUAL BACKGROUND

13.    Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

14.    The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

15.    Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

16.    The FCRA is intended to ensure CRAs exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

17.    Defendant Equifax is one of the three major consumer reporting agencies (at times referred to collectively as "the CRA's" and individually as a "CRA") in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports (i.e., credit reports).

18.    Defendant Experian is one of the three major consumer reporting agencies (at times referred to collectively as "the CRA's" and individually as a "CRA") in the United

States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports (i.e., credit reports).

19.    Defendants' consumer reports generally contain the following information: (i) <u>Header/Identifying Information:</u> this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

20.    Defendants obtain consumer information from various sources. Some consumer information is sent directly to Defendants, and other information must be independently gathered by Defendants, or acquired from third party providers, vendors or repositories, such as computerized reporting services like PACER or Lexis-Nexis.

21.    Defendants also obtain information from other CRAs (who commonly share information).

22.    Defendants regularly seek out and procure consumer bankruptcy filing and discharge information on a daily basis, with the intention of including it in the consumer reports Defendants sell to third parties for a profit.

23.    The diligence Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in Defendants' subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

24.    Defendants' unreasonable policies, procedures, and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

25.    Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

26.    The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendants) to make lending decisions.

27.    The information Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

28.    FICO Scores are calculated using information contained in Defendants' consumer reports.

29.    FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

30.    FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

a. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

b. The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

31.    Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Defendants in consumer reports.

32.    DTI compares the total amount a consumer owes to the total amount a consumer earns.

33.    Defendants regularly provide information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Defendants.

34.    A consumer's income, however, is not included in their consumer report; only their amount of debt is.

35.    The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for consumers

to obtain credit, and the worse the credit terms will be (e.g., higher interest, lower credit limits).

36.     A consumer who has obtained a bankruptcy discharge and has a consumer report that is reporting outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting as having a zero balance.

37.     Defendants are well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged.

38.     However, Defendants also know that it is rare for a pre-petition debt to be reaffirmed or successfully challenged in an adversary proceeding.

39.     Further, Defendants know that if reaffirmation agreements or adversary proceedings exist, they will be explicitly identified on an individual consumer's bankruptcy docket sheet.

40.     Additionally, information indicating that a specific debt has not been discharged, but instead was reaffirmed or successfully challenged through an adversary proceeding, is retrieved from the same sources from which Defendants voluntarily obtained consumer bankruptcy case information.

41.     Defendants also receive information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

42.     However, Defendants regularly report inaccurate information about consumers' debts after they receive a Discharge Order.

43.     Rather than follow reasonable procedures to assure maximum possible accuracy, as is required by the FCRA, Defendants frequently report information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

44.     Defendants regularly publish consumer information that conflicts with the information provided by data furnishers, included in Defendants' credit files, contained in public records that Defendants regularly access, and/or sourced through Defendants' independent and voluntary efforts.

45.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendants for their inaccurate consumer reporting following a Chapter 7 discharge, including failure to report the discharge.

46.     Therefore, Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures, which often produce inaccurate public record information, balances, and account and payment statuses.

### _Allegations Specific to the Credit Reporting of Plaintiff_

47.     Plaintiff filed for a Chapter 7 Bankruptcy on or about July 13, 2023 in the United States Bankruptcy Court for the Eastern District of Michigan petition no. 2:23-bk-46145.

48.      Plaintiff received an Order of Discharge on or about December 8, 2023.

49.     Thereafter, Plaintiff was not personally liable for her dischargeable debts and these debts have a $0 balance after the bankruptcy discharge.

50.     Defendants prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

51.     Defendants reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the date of the last status update.

52.     Defendants reported Plaintiff's consumer bankruptcy information in the Public Records section and certain individual tradelines of Plaintiff's consumer reports.

53.     Upon information and belief, Defendants received notice of Plaintiff's bankruptcy discharge through their independent collection of Plaintiff's consumer information through vendors such as Lexis-Nexis, as well as from furnishers that provided data regarding the individual tradelines featured on Plaintiff's consumer reports.

54.     Defendants also obtain information from other CRAs (who commonly share information).

55.     Defendants are aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

56.     Defendants should have reported all of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero balance but did not.

57.     Defendants should not have reported any late payment history in the months after Plaintiff filed for bankruptcy.

58.     Defendants also should not have reported any "delinquencies" after the bankruptcy discharge.

59.     Rather than accurately report the discharged debts, Defendant reported Plaintiff's accounts with numerous inaccuracies.

*Inaccuracies on Plaintiff's Consumer Report/s*

60.     The name, social security number, and address in Plaintiff's Chapter 7 petition match the information listed on her Equifax and Experian consumer reports.

61.     Defendants failed to report Plaintiff's bankruptcy discharge even though Defendant had all the correct personal information for Plaintiff in its database which matched the personal information reported in Plaintiff's Chapter 7 petition (e.g., full name, social security number, address).

62.     Defendants knew or should have known that Plaintiff's bankruptcy was discharged.

63.     Defendants reported debts that were in fact discharged in bankruptcy and were therefore required to report these as discharged and/or with a zero balance. However, Defendant's failure to report Plaintiff's bankruptcy, filed in July 2023 and discharged in December 2023 in Plaintiff's consumer report contributed to the numerous inaccuracies listed in Plaintiff's consumer report.

64.     Upon information and belief, the following furnishers of information accurately reported to Defendants that Plaintiff's accounts were included in Plaintiff's

bankruptcy discharge and/or had a zero balance after the bankruptcy filing/discharge, but Defendants rejected or revoked the data furnished to it and inaccurately overrode the reporting of the accounts.

65.    On Plaintiff's consumer disclosure, Defendant Equifax inaccurately reported Plaintiff's BANK OF MISSOURI account, account number xxxxxxxxxxxx5103 and opened in October 2019 as a "Charge Off". Thus, Equifax knows this account predated Plaintiff's bankruptcy and is discharged thereby.

66.    Defendant Equifax also inaccurately reported Plaintiff's BANK OF MISSOURI account, account number xxxxxxxxxxxx9794 and opened in December 2019 with a status of "Charge Off" following Plaintiff's bankruptcy filing in July 2023 and after the discharge in December 2023. Thus, Equifax knows this account predated Plaintiff's bankruptcy and is discharged thereby.

67.    Defendant Equifax further inaccurately reported Plaintiff's REVVI/MRV BANKS account, account number xxxxxxxxxx8885 and opened in August 2022 with a status of "Charge Off" following Plaintiff's bankruptcy filing in July 2023 and after the discharge in December 2023. Thus, Equifax knows this account predated Plaintiff's bankruptcy and is discharged thereby.

68.    Similarly, Defendant Experian inaccurately reported Plaintiff's AUTO TRAKK, LLC account, account number xxx01 and opened in January of 2022 as "Voluntarily surrendered" with an open balance of $11, 689 following Plaintiff's bankruptcy filing in July 2023 and after the discharge in December 2023. Thus, Experian knows this account predated Plaintiff's bankruptcy and is discharged thereby.

12

69.     Upon information and belief, Lexis-Nexis furnished information to all three CRAs, including Defendants, that indicated Plaintiff had filed for bankruptcy and received a discharge, but Defendants rejected or otherwise failed to report the data it received.

70.     Upon information and belief, some or all of the data furnishers of the foregoing tradelines provided information to all three CRAs, including Defendants, that indicated their corresponding accounts had been discharged in bankruptcy, but Defendants rejected or otherwise overrode the data it/they received.

71.     In addition, public records reflecting Plaintiff's bankruptcy filing and subsequent discharge are readily available to Defendants through multiple sources such as PACER, but, Defendants failed to review those sources or knowingly rejected them.

72.     In any event, Defendants knew or had reason to know that they reported information contradicted by notices received from third parties.

73.     Defendant Experian inaccurately reported that Plaintiff owed money that she did not actually owe, and also reported inaccurate Account status.

74.     Defendant Experian inaccurately reported Plaintiff's AUTO TRAKK account with a balance owed after it was discharged in Chapter 7 Bankruptcy.

75.     Defendant Experian failed to indicate that the foregoing Account had a zero-dollar balance and was discharged in Chapter 7 Bankruptcy.

76.     Defendant Equifax inaccurately reported two of Plaintiff's discharged BANK OF MISSOURI accounts and Plaintiff's REVVI/MRV account as "Charge Offs" after the discharge.

77.     Notably, non-party Trans Union, the other national CRA, reported Plaintiff's accounts accurately on consumer reports produced after Plaintiff's discharge.

78.     Defendants' reporting of the Accounts is patently inaccurate.

79.     If not patently inaccurate, Defendants' reporting of the Accounts is materially misleading.

## *Plaintiff's Damages*

80.     Plaintiff's DTI was negatively affected by Defendant Experian's reporting of debt which Plaintiff does not owe, in turn negatively impacting Plaintiff's credit worthiness.

81.     Defendants' inaccurate reporting of the Accounts, along with additional information belonging to Plaintiff, was published to creditors by Defendants during the process of any of Plaintiff's credit applications.

82.     Plaintiff's consumer credit file and consumer reports were also reviewed by numerous other entities after the discharge of her bankruptcy; those entities viewed the erroneous information published by Defendants.

83.     As a direct result of Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

84.     As a direct result of Defendants' inaccurate reporting, Plaintiff also suffers actual damages in the form of attorneys' fees incurred, related to Defendants' inaccurate reporting.

85.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, disturbance of sleep, reputational damage, humiliation, stress, anger, frustration, shock, invasion of Plaintiff's privacy, embarrassment, and anxiety.

## COUNT I

### AGAINST EQUIFAX

### Violations of the FCRA, 15 U.S.C. § 1681e(b)

86.     Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

87.     The FCRA requires CRAs, like Equifax, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

88.     Defendant Equifax negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy debts after a consumer receives a Discharge Order.

89.     Defendant Equifax received notice of Plaintiff's bankruptcy and discharge through public records, independent collection of consumer information directly obtained by Defendant through sources of consumer information such as Lexis Nexis, Defendant's own files, and information provided by data furnishers, yet Defendant Equifax rejected that information.

15

90.    Defendant Equifax's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 7 Bankruptcy.

91.    Defendant Equifax's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

92.    Defendant Equifax's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

93.    Defendant Equifax knows the information it reports about consumers' bankruptcies is often inconsistent with public records and its/their own files, including other furnishers that report to Defendant that the consumer's bankruptcy has been discharged.

94.    In this case, the inaccurately reported debts pertain to accounts Equifax knew predated Plaintiff's Chapter 7 Bankruptcy, were included and discharged by Plaintiff's bankruptcy discharge, and should therefore have reported as discharged in bankruptcy.

95.    Defendant Equifax's failure to maintain and employ reasonable procedures to assure the maximum accuracy of consumers' post-bankruptcy accounts is particularly egregious because the Defendant regularly and voluntarily searches for consumer bankruptcy information to include in credit files.

96.    Defendant Equifax knew or should have known it is obligated, by the FCRA, to maintain and employ reasonable procedures to assure it reports maximally accurate consumer credit information.

16

97.     Defendant Equifax knew or should have known it is obligated, by the FCRA, to update consumer reports and individual tradelines after receiving notice of a Chapter 7 Bankruptcy Discharge.

98.     Defendant Equifax knew or should have known that the effect of a Discharge Order in a no-asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

99.     CRAs' obligations are established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving the Defendant.

100.    Therefore, Defendant Equifax had ample notice of its obligations under the FCRA and its continued use of unreasonable procedures.

101.    If Defendant Equifax contends it did not have sufficient notice, Defendant must justify its own failure to review and/or locate the substantial written materials that detail CRAs' duties and obligations under the FCRA, including where consumers file for Chapter 7 Bankruptcy.

102.    Defendant Equifax regularly conducts voluntary public records searches with the intention of including bankruptcy information on the consumer reports it sells to other parties for a profit.

103.    In this case, Defendant Equifax knew or should have known about Plaintiff's bankruptcy filing and discharge and failed to include that information in Plaintiff's consumer disclosure and in consumer reports published to third parties.

104.    When Defendant Equifax received notice of Plaintiff's bankruptcy information, it had an obligation to ensure it reported Plaintiff's discharge and its effects with maximal accuracy.

105.    Unfortunately, Defendant Equifax willfully and consciously breached its duties as [a] CRA and deprived Plaintiff of her right to a fair and accurate consumer report.

106.    Despite knowledge of its legal obligations, Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer disclosure/consumer report.

107.    Defendant Equifax knows that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date.

108.    Yet, in this case, Defendant Equifax reported an account that predated Plaintiff's bankruptcy with an improper account status, and/or erroneous late payment history, after Plaintiff's discharge.

109.    Defendant Equifax knew or should have known the information it reported about the accounts was inaccurate.

110.    Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendant knew or should have known the information Defendant is reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and/or reasonably available to Defendant.

111.    Defendant Equifax's violations of 15 U.S.C. § 1681e(b) were willful.

112.    Alternatively, Defendant Equifax's violations of 15 U.S.C. § 1681e(b) were negligent.

113.    Defendant   Equifax's   inaccurate   reporting   damaged   Plaintiff's creditworthiness.

114.    Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Defendant's inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

115.    Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

116.    Defendant Equifax is a direct and proximate cause/s of Plaintiff's damages.

117.    Defendant Equifax is a substantial factor/s in Plaintiff's damages.

118.    Therefore, Defendant Equifax is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq.*

## COUNT II
## AGAINST EXPERIAN
### Violations of the FCRA, 15 U.S.C. § 1681e(b)

119.    Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

120.    The FCRA requires CRAs, like Experian, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

121.   Defendant Experian negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy debts after a consumer receives a Discharge Order.

122.   Defendant Experian received notice of Plaintiff's bankruptcy and discharge through public records, independent collection of consumer information directly obtained by Defendant through sources of consumer information such as Lexis Nexis, Defendant's own files, and information provided by data furnishers, yet Defendant Equifax rejected that information.

123.   Defendant Experian's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 7 Bankruptcy.

124.   Defendant Experian's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

125.   Defendant Experian's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

126.   Defendant Experian knows the information it reports about consumers' bankruptcies is often inconsistent with public records and its/their own files, including other furnishers that report to Defendant that the consumer's bankruptcy has been discharged.

127.   In this case, the inaccurately reported debts pertain to accounts Experian knew predated Plaintiff's Chapter 7 Bankruptcy, were included and discharged by

Plaintiff's bankruptcy discharge, and should therefore have reported as discharged in bankruptcy with a zero balance.

128.    Defendant Experian's failure to maintain and employ reasonable procedures to assure the maximum accuracy of consumers' post-bankruptcy accounts is particularly egregious because the Defendant regularly and voluntarily searches for consumer bankruptcy information to include in credit files.

129.    Defendant Experian knew or should have known it is obligated, by the FCRA, to maintain and employ reasonable procedures to assure it reports maximally accurate consumer credit information.

130.    Defendant Experian knew or should have known it is obligated, by the FCRA, to update consumer reports and individual tradelines after receiving notice of a Chapter 7 Bankruptcy Discharge.

131.    Defendant Experian knew or should have known that the effect of a Discharge Order in a no-asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

132.    CRAs' obligations are established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving the Defendant.

133.    Therefore, Defendant Experian had ample notice of its obligations under the FCRA and its continued use of unreasonable procedures.

134.   If Defendant Experian contends it did not have sufficient notice, Defendant must justify its own failure to review and/or locate the substantial written materials that detail CRAs' duties and obligations under the FCRA, including where consumers file for Chapter 7 Bankruptcy.

135.   Defendant Experian regularly conducts voluntary public records searches with the intention of including bankruptcy information on the consumer reports it sells to other parties for a profit.

136.   In this case, Defendant Experian knew or should have known about Plaintiff's bankruptcy filing and discharge and failed to include that information in Plaintiff's consumer disclosure and in consumer reports published to third parties.

137.   When Defendant Experian received notice of Plaintiff's bankruptcy information, it had an obligation to ensure it reported Plaintiff's discharge and its effects with maximal accuracy.

138.   Unfortunately, Defendant Experian willfully and consciously breached its duties as [a] CRA and deprived Plaintiff of her right to a fair and accurate consumer report.

139.   Despite knowledge of its legal obligations, Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer disclosure/consumer report.

140.   Defendant Experian knows that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date.

141.    Yet, in this case, Defendant Experian reported an account that predated Plaintiff's bankruptcy with an improper account status and an open balance, after Plaintiff's discharge.

142.    Defendant Experian knew or should have known the information it reported about the accounts was inaccurate.

143.    Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendant knew or should have known the information Defendant is reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and/or reasonably available to Defendant.

144.    Defendant Experian's violations of 15 U.S.C. § 1681e(b) were willful.

145.    Alternatively, Defendant Experian's violations of 15 U.S.C. § 1681e(b) were negligent.

146.    Defendant Experian's inaccurate reporting damaged Plaintiff's creditworthiness.

147.    Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Defendant's inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

148.    Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

149.    Defendant Experian is a direct and proximate cause/s of Plaintiff's damages.

150.    Defendant Experian is a substantial factor/s in Plaintiff's damages.

151.    Therefore, Defendant Experian is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

(a)    Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681e(b);

(b)    An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)    An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)    An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e)    Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f)    Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

24

## VI.    <u>JURY DEMAND</u>

Plaintiff hereby demands jury trial on all issues so triable.

Dated: March 12, 2024

By:

<u>/s/ Yitzchak Zelman</u>
Yitzchak Zelman, Esq.
701 Cookman Avenue, Suite 300
Asbury Park, NJ 07712
(732) 695-3282
yzelman@marcuszelman.com
*Attorney for Plaintiff*

25